

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

February 17, 1947

Hon. N. F. Foster
County Auditor
Smith County
Tyler, Texas

Opinion No. V-23

Re: Whether the Commissioners'
Court of Smith County may
legally expend county funds
to build a dwelling for the
use and occupancy of the
county engineer.

Dear Sir:

Your letter of January 20, 1947, in which you re-
quested an opinion of this Department is as follows:

"Smith County employs a County Engineer and
included in his many duties is the supervision of
the County Garage and Warehouse, which services
and maintains the Road Machinery and Equipment for
the County Road System.

"Please advise if the Commissioners Court of
Smith County may legally expend County Funds to
build a dwelling for the use and occupancy of the
County Engineer. This dwelling is to be built on
a portion of the County property upon which the
County Garage and Warehouse is located, or upon
property to be purchased adjacent to said property.

"If your opinion shows this to be a legal ex-
penditure, from which fund should it be made, the
Permanent Improvement or the Road and Bridge?"

On January 28, 1947, this Department received
additional facts relating to the same matter from the Hon-
orable Arch T. Power, County Judge of Smith County, which
are as follows:

"As you will recall from our conversation in
Austin a few days ago, I promised to give you a full
statement of facts concerning the request for an opin-
ion submitted by N. F. Foster, County Auditor of Smith
County, with reference to the erection of a house for
a keeper or a watchman.

"Smith County has purchased some three acres of land and is in the process of erecting a county garage and warehouse for general operations, countywide. The mechanical work upon all of the equipment of the County will be done in this garage and all of the supplies will be stored there. As a matter of fact the whole Road and Bridge Department of the County will operate out of these headquarters. There will be stored on the yard supplies of various kinds and a large part of the machinery and most of the trucks belonging to the County will be stored there each night.

"The Commissioners Court had in mind from the beginning to erect on the premises or immediately adjacent to them on an additional plot of ground, a cottage to be occupied by some employee of the general headquarters, so that they would be available for contact at any time, as well as to watch and protect the properties there situated.

"Now, owing to the terrific housing situation, we had decided that we would permit the County Engineer who is in complete charge of all of these operations, to occupy such cottage until he made more suitable arrangements, and then perhaps the storekeeper or warehouseman would occupy such cottage.

"It seems to me that such an arrangement purely for the protection and conservation of such property, together with the fact that the occupant of such cottage would be constantly on the job or subject to call, would be in line with the operation of such set-up as contemplated and certainly should be a legal expenditure out of the Permanent Improvement Fund."

Section 9 of Article VIII of the Texas Constitution reads in part as follows:

"The State tax on property, exclusive of the tax necessary to pay the public debt, and of the taxes provided for the benefit of the public free schools, shall never exceed thirty-five (35) cents on the one hundred dollars valuation; and no county, city or town shall levy more than twenty-five (25) cents for city or county purposes, and not exceeding fifteen (15) cents for roads and bridges, and not exceeding fifteen (15) cents to pay jurors, on the one hundred dollars valu-

ation, except for the payment of debts incurred
prior to the adoption of the Amendment September
25, 1883; and for the erection of public build-
ings, streets, sewers, waterworks and other per-
manent improvements, not to exceed twenty-five
(25) cents on the one hundred dollars valuation,
in any one year, and except as is in this Consti-
tution otherwise provided; provided, however, that
the Commissioners Court in any county may re-allo-
cate the foregoing county taxes by changing the
rates provided for any of the foregoing purposes
by either increasing or decreasing the same, but
in no event shall the total of said foregoing
county taxes exceed eighty (80) cents on the one
hundred dollars valuation, in any one year; pro-
vided further, that before the said Commissioners
Court may make such re-allocations and changes in
said county taxes that the same shall be submitted
to the qualified property tax paying voters of such
county at a general or special election, and shall
be approved by a majority of the qualified property
tax paying voters, voting in such election; and,
provided further, that if and when such re-alloca-
tions and changes in the aforesaid county taxes
have been approved by the qualified property tax
paying voters of any county, as herein provided,
such re-allocations and changes shall remain in
force and effect for a period of six (6) years
from the date of the election at which the same
shall be approved, unless the same again shall have
been changed by a majority vote of the qualified
property tax paying voters of such county, voting
on the proposition, after submission by the Commis-
sioners Court at a general or special election for
that purpose; and the Legislature may also authorize
an additional annual ad valorem tax to be levied and
collected for the further maintenance of the public
roads; provided, that a majority of the qualified
property tax paying voters of the county voting at
an election to be held for that purpose shall vote
such tax, not to exceed fifteen (15) cents on the
one hundred dollars valuation of the property sub-
ject to taxation in such county. And the Legisla-
ture may pass local laws for the maintenance of the
public roads and highways, without the local notice
required for special or local laws. This section
shall not be construed as a limitation of powers del-
egated to counties, cities or towns by any other sec-
tion or sections of this Constitution. (Sec. 9, Art.

VIII, adopted election Nov. 7, 1944.)"

Our State Constitution, Article 5, Section 18, provides in part as follows:

"The county commissioners so chosen, with the county judge, as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed."

Article 2351, V.A.C.S., sets forth the following powers and duties of the County Commissioners' Court:

"Sec. 7. Provide and keep in repair courthouses, jails and all necessary public buildings."

Article 2352, V.A.C.S., refers to the tax for "erection of public buildings" by the County Commissioners' Court.

"Said court shall have the power to levy and collect a tax for county purposes, not to exceed twenty-five cents on the one hundred dollars valuation, and a tax not to exceed fifteen cents on the one hundred dollars valuation to supplement the jury fund of the county, and not to exceed fifteen cents for roads and bridges on the one hundred dollars valuation, except for the payment of debts incurred prior to the adoption of the amendment to the Constitution, September 25, A.D. 1883, and for the erection of public buildings, streets, sewers, water works and other permanent improvements, not to exceed twenty-five cents on the one hundred dollars valuation in any one year, and except as in the Constitution otherwise provided. They may levy an additional tax for road purposes not to exceed fifteen cents on the one hundred dollar valuation of the property subject to taxation, under the limitations and in the manner provided for in Article 8, Sec. 9, of the Constitution and in pursuance of the laws relating thereto."

Justice Fly in the case of Edwards County vs. Jennings, reported in 33 S.W. 585, had this to say:
"Counties are political or civil divisions of the State, created for the purpose of bringing government home to the people, and supplying the neces-

sary means for executing the wishes of the people,
and bringing into exercise the machinery necessary
to the enforcement of local government. Counties,
being component parts of the State, have no powers
or duties except those clearly set forth and de-
fined in the Constitution and statutes."

"The statutes have clearly defined the powers,
prescribed the duties and imposed the liabilities
of the Commissioners' Court, the medium through
which the different counties act, and from those
statutes must come all the authority vested in the
county." 11 Tex. Jur. 563.

The same ruling was held in Moore vs. McLennan
County, et al, 275 S.W. 478; El Paso County vs. Elam, 106
S.W. (2) 393, and in many other cases too numerous to cite.

From the constitutional provision and the stat-
utes quoted above, we find that the County Commissioners'
Courts have the power to provide and keep in repair all
necessary public buildings. We quote from Tex. Jur., Vol.
34, page 2, as follows:

"Public buildings is a term ordinarily used to
designate such structures as the capitol on the cap-
itol ground at Austin including the executive mansion,
the various State asylums, all University buildings
erected by the State, courthouses, jails and other
buildings held for public use by any department or
branch of government, State, county or municipal."

Construing Section 9 of Article VIII of the Tex-
as Constitution and Section 7 of Article 2351, supra, in
conjunction with all the other statutes relating to the
powers of the County Commissioners' Court and in the light
of the necessity of the Court acting within the sphere of
its powers and duties conferred upon it, it is the opin-
ion of this Department that the term "public buildings"
means "necessary public buildings" and that "necessary
public buildings" mean public buildings necessary for the
conduct of county business.

Bearing in mind the foregoing definitions, the
above quoted provision of the Constitution and statutes,
and the foregoing decisions of the Courts of this State,
and, furthermore, since there is no statute in this State
expressly authorizing a county to construct a private
dwelling as mentioned in your request, it is the opinion
of this Department that the Commissioners' Court of Smith

County cannot legally build a <u>private dwelling</u> or cottage for the County Engineer, the Storekeeper or Warehouseman or any other county employee.

### SUMMARY

The Commissioners' Court of Smith County cannot legally expend any of the Permanent Improvement Funds of the county for building a private dwelling or cottage for the County Engineer, the Storekeeper or Warehouseman, or any other county employee. Article 2351, V.A. C.S.; Edwards County vs. Jennings, 33 S.W. 585; 11 Tex. Jur. 563; Moore vs. McLennan County, et al, 275 S.W. 478; El Paso County vs. Elam 106 S.W. (2) 393.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Bruce Allen*

Bruce Allen
Assistant

APPROVED FEB. 17, 1947

*Price Daniel*

ATTORNEY GENERAL

BA:djm:jrb

Approved Opinion Committee
By BWB, Chairman